FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 JAN 31  AM 9: 10

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL S. BENBOW, JAMES B. BASSICH AND ROBERT W. PHILLPOTT,<br>Plaintiffs<br><br>VERSUS<br><br>ASPEN TECHNOLOGY, INC.,<br>Defendants | C. A. NO. 02-2881<br><br>SECTION: A (ZAINEY)<br><br>MAGISTRATE JUDGE: 3 (KNOWLES) |

### ASPEN'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE "AMENDING AND SUPPLEMENTAL" COMPLAINT

Defendant Aspen Technology, Inc. ("Aspen") respectfully submits the following reply memorandum in response to plaintiffs' brief in opposition ("Opp. Mem.") and in further support of its motion to dismiss the "Amending and Supplemental Complaint" ("Amended Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs' opposition brief exemplifies why Congress enacted the Private Securities Litigation Reform Act of 1995 ("Reform Act"). It is filled with conclusory assertions, illogical arguments and, to top it off, baseless accusations against Aspen's counsel.[1] Plaintiffs seem to be

---

[1] For example, plaintiffs accuse Aspen of making a "serious misrepresentation to the court [by] misleadingly suggest[ing]" that Aspen's Board decided to "suspend temporarily the registration process" instead of telling the Court that "Aspen merely suspended any effort on its part to register Plaintiffs' stock." Opp. Mem. at 3-4. Frankly, we are not clear on what the distinction it is plaintiffs are trying to make, although it does appear as if they are conflating the registration process with a registration statement. Aspen never stated that the registration statement was renewed. Rather, Aspen stated that the process of registering the plaintiffs' stock was suspended temporarily (it was temporary, as proven by the fact that the stock was registered) because of other business activity and

1

creating as much confusion and uncertainty as possible in the hopes that the Court will simply throw up its hands and let the case go forward into discovery so the supposedly "fact-intensive" issues can someday sort themselves out. Rule 9(b) and the Reform Act simply do not permit this tactic:

> In the context of securities litigation it has generally been held that Rule 9(b) serves three purposes: (1) it ensures that allegations are specific enough to inform a defendant of the act of which the plaintiff complains, and to enable him to prepare an effective response and defense; (2) it eliminates those complaints filed as a pretext for the discovery of unknown wrongs -- a 9(b) claimant must know what his claim is when he files; and (3) it seeks to protect defendant[s] from unfounded charges of wrongdoing which injure their reputations and goodwill.

Bovee v. Coopers & Lybrand, 272 F.3d 356, 361-62 (6th Cir. 2001); see also ABC Arbitrage Plaintiffs Group v. Tchuruk, 291 F.3d 336, 354 (5th Cir. 2002) ("[T]he PSLRA's goal [is to] flush[] out suits which are built on mere speculation and conclusory allegations and which aim to use discovery as a fishing expedition to substantiate frivolous claims."). We respond below to the most significant errors and concessions in plaintiffs' brief.

## Argument

### I.  PLAINTIFFS INSUFFICIENTLY ALLEGE STANDING

The law on standing in securities actions is clear: "[E]ven if it can be established that there has been wrongdoing 'in connection with the purchase or sale of a security,' a private party lacks standing to recover under Rule 10b-5 unless he can allege and establish that he is the purchaser or seller of the security." Sanderson v. H.I.G. P-XI Holding, Inc., No. 99-3313, 2000 WL 1042813,

---

in conformity with RRA. See Aspen Mem. at 3-4 & Ex. B § 2.1. The registration of any stock can be a time-consuming endeavor, including the necessity of submitting successive statements. It is precisely for that reason that the RRA contemplates the need to defer and renew the registration process. See id. Aspen never misrepresented this process to the Court.

Plaintiffs also say that they "strenuously object" to Aspen's "improper device of affixing references to Plaintiffs' pleading next to defendant's incorrect assertions, as if these assertions were set forth in the Complaint." Opp. Mem. at 3. One need only read Aspen's brief along with the references therein to see that this accusation is false. It is also surprising that plaintiffs would try to level such a claim, given that their own brief contains many pages of narrative reference to virtually no authority at all. See, e.g., Opp. Mem. at 1-3.

2

*9 (E.D. La. July 27, 2000) (granting defendant's motion to dismiss) (emphasis added). Proof of standing must be <u>alleged in the complaint</u>. <u>Raines v. Byrd</u>, 521 U.S. 811, 818 (1997) ("[Plaintiffs], based on their complaint, must establish that they have standing to sue.").

Plaintiffs make only one attempt to meet this burden. Citing a single, forty year-old decision from the Fifth Circuit, which predates by almost <u>fifteen years</u> the Supreme Court's definitive ruling on the subject, plaintiffs contend they are purchasers of Aspen stock because the stock was allegedly "issued" to them. <u>See</u> Opp. Mem. at 6-7. This conclusory argument, contained in three paragraphs of plaintiffs' 18-page brief, does not come close to establishing standing.

<u>First</u>, the argument is incorrect. Following the Supreme Court's seminal decision in <u>Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723 (1975), the law is settled that a stock issuance does <u>not</u> by itself make the parties "purchasers" and "sellers" under 10b-5. <u>Id.</u> at 738 (shareholders of "corporate issuer" may only state cause of action "<u>if</u> the latter is itself a purchaser or seller of securities"); <u>see also</u> <u>Global Intellicom, Inc. v. Thomson Kernaghan & Co.</u>, No. 99-342, 1999 WL 544708, *8 (S.D.N.Y. July 27, 1999) ("An issuer may not maintain a claim for damages under Section 10b-5 <u>unless</u> it is a purchaser or seller of securities.") (emphasis added); <u>Gelles v. TDA Indus., Inc.</u>, No. 90-5133, 1993 WL 275216, *5 (S.D.N.Y. July 16, 1993) ("[N]ot every exchange of stock involves the purchase or sale of securities."). In fact, a decision <u>from this Court</u> held that "<u>Rule 10b-5 rights are not automatically assigned by the transfer of the underlying security.</u>" <u>Sanderson v. H.I.G. P-XI Holding, Inc.</u>, No. 99-3313, 2000 WL 1042813, *9 (E.D. La. July 27, 2000) (emphasis added). Further, plaintiffs' only authority actually supports Aspen's position. <u>Hooper v. Mountain States Sec. Corp.</u>, 282 F.2d 195 (5th Cir. 1960) (<u>see</u> Opp. Mem. at 6), held simply that under some circumstances issuers <u>could</u> be considered sellers; it did not, as plaintiffs argue, make a general pronouncement that all issuers are necessarily "sellers" and all issuees are necessarily "purchasers."

<u>Second</u>, plaintiffs' argument misses the point. The lesson from <u>Blue Chip Stamps</u> (and <u>Hooper</u>, for that matter) is that the determination of who should be considered "purchasers" and

3

"sellers" for purposes of the securities laws turns on the realities of the transaction, not the labels placed on the parties. As we pointed in our opening brief, it is clear from the realities of this transaction that the true purchaser was CPU, not the individual shareholders. See Aspen Mem. at 8-9 & Ex. A (Purchase Agreement).[2]

## II. PLAINTIFFS HAVE CONCEDED LACK OF CAUSATION

In order to sustain a securities claim at the pleading stage a plaintiff must allege in the complaint both "transaction" and "loss" causation. See Aspen Mem. at 10-12. Plaintiffs not only fail to challenge this standard, they have conceded the first prong and ignored the second. The Amended Complaint should be dismissed under either or both prongs.

### A. Plaintiffs Concede Transaction Causation

In order to allege and prove transaction causation, plaintiffs must show that, but for the alleged fraud, they would not have engaged in the transaction at issue. In opposition, plaintiffs concede this point and thus undercut their case:

> Had not plaintiffs agreed to execute the Registration Rights Agreement, the Membership Interest Purchase Agreement would not have closed. In any event, plaintiffs do not seek to undo the Membership Interest Purchase Agreement

Opp. Mem. at 7 (emphasis added).

Moreover, even if plaintiffs individually wanted not to proceed, the Amended Complaint fails to allege how plaintiffs had any control over this. See Aspen Mem. at 10-11. Plaintiffs challenge this by stating that "the defendant, as part of the [Purchase Agreement], required, at its closing, the execution of the [RRA] by Plaintiffs." Opp. Mem. at 7. This is a misstatement of the Purchase Agreement and the RRA. There is nothing in either agreement that states that, had plaintiffs (representing only 35% of CPU ownership) held out their approval of the RRA, either the

---

[2] Plaintiffs' only argument relating to the actual transaction is that the use of the word "resale" in the Form S-3 meant that "the selling shareholders, including Plaintiffs, had previously 'purchased' the shares at issue. Opp. Mem. at 7. The flaw in this reasoning is obvious: The fact that the SEC filing refers to the stock's "resale" means only that the stock was previously sold, it says nothing about to whom it was sold. In fact, it is clear from the contract documents and the Amended Complaint that the stock was sold to CPU.

4

RRA or the Purchase Agreement could not be executed. (Significantly, what plaintiffs' argument suggests is that their approval was actually the <u>consideration</u> given to CPU in order to receive the shares.)

### B. Plaintiffs Ignore Loss Causation

The element of loss causation requires plaintiffs to allege and prove that the alleged misrepresentation or omission relates to that which caused the investment to lose value. Aspen Mem. at 11-12. The requirement is so important that Congress codified it. <u>See</u> 15 U.S.C. § 78u-4(b)(4); <u>see also</u> <u>Huddleston v. Herman & Maclean</u>, 640 F.2d 534, 549 (5th Cir. 1981) ("The causation element is satisfied in a Rule 10b-5 case <u>only</u> if the misrepresentation touches upon the reasons for the investment's decline in value.") (emphasis added).

Neither the Amended Complaint nor plaintiffs' opposition allege -- nor could they allege -- that Aspen's supposed misrepresentations were the reason the stock declined in value. Plaintiffs' only theory of loss is that they were delayed in their ability to sell the stock, but courts have soundly rejected this as a basis for 10b-5 liability, in part because "[t]he timing and volume of sales [plaintiff] would have undertaken but for the alleged fraud are almost inevitably matters of speculation." <u>Gurley v. Documation Inc.</u>, 674 F.2d 253, 257 (4th Cir. 1982) (holding that a plaintiff who "claims he was fraudulently caused to delay the sale of securities lacks standing to sue under § 10(b) of the 1934 Act" and dismissing the cause of action); <u>see also</u> <u>Gambella v. Guardian Inv. Serv. Corp.</u>, 75 F. Supp. 2d 297, 299 (S.D.N.Y. 1999) (dismissing cause of action where plaintiff claimed he was caused to "to <u>retain</u> securities by a defendant's fraudulent conduct") (emphasis in original).[3] Plaintiffs' failure to plead loss causation is reason enough to dismiss their complaint.

---

[3] As an example of the arbitrariness of plaintiffs' claims, if we assume that in the absence of the alleged fraud Aspen's Form S-3 took 53 days to become effective (which is the average time for Form S-3's according to the SEC's most recent study), the share price for the following day (Aug. 8, 2001) was $16.96, meaning that according to plaintiffs' own allegations they would have lost only 92¢ per share, as opposed to the $9.54 per share they are claiming as damages. See Securities and Exchange Commission, Report of the Advisory Committee on Capital Formation and Regulatory Processes, Fed. Sec. L. Rep. (CCH) at 48, tbl. 2 (July 24, 1996) (also at http://www.sec.gov/news/studies/capform.htm).

5

### III. PLAINTIFFS' STATUTE OF LIMITATIONS ARGUMENT ACTUALLY SUPPORTS DISMISSAL OF THEIR SECURITIES CLAIMS

Plaintiffs' attempt to avoid dismissal based on the one-year statute of limitations is either factually flawed or concedes that plaintiffs suffered no damages. In either event, plaintiffs have failed to state a claim upon which relief can be granted.

#### A. If Plaintiffs First Had Notice On Or After September 18, 2001, Their Claims Must Be Dismissed For Lack Of Injury

Plaintiffs contend that they satisfied the statute of limitations because they did not learn of the alleged omissions or misrepresentations until after September 18, 2001, less than a year before they brought their claims on September 18, 2002. Opp. Mem. at 8-10. If that is the case, then plaintiffs cannot begin to calculate their damages until after that time, because it is only then that they tried to sell the stock. If they had tried to sell their stock earlier plaintiffs would have learned that the stock was not yet registered.[4] This concession is fatal to their claims because the price of the stock actually rose from September through December.[5] In other words, the plaintiffs were better off having not been able to sell when they wanted to.

---

[4] Plaintiffs concede in their brief that it was the act of learning about the shares' marketability and/or the act of trying to sell the shares which marked the point at which it can be said they were put on notice sufficient for purposes of the statute of limitations. Opp. Mem. at 10 (plaintiffs contend they have satisfied this one-year limitations period because Aspen "has not shown when Plaintiffs made discovery of the facts constituting the violation other than the date they were belatedly permitted to sell the shares issued to them by Aspen, i.e., no earlier than December 26, 2001") (citing Am. Comp. ¶ 23) (emphasis added). This jibes with the case law, which holds that the statute of limitations period begins to run when the plaintiff is put on inquiry notice -- that is, "notice of facts which, in the exercise of due diligence, would have led to knowledge." Jensen v. Snellings, 841 F.2d 600, 606 (5th Cir. 1988) (upholding dismissal of 10b-5 claims)(citations and quotations omitted). Thus, the Fifth Circuit has held that "[t]he requirement of diligent inquiry imposes an affirmative duty upon the potential plaintiff" and "investors are not free to ignore 'storm warnings' which would alert a reasonable investor to the possibility of fraudulent statements or omissions in his securities transaction." Id. at 607 (citations omitted) (emphasis added). As we will see, this can be decided as a matter of law. See infra p. 7.

[5] This is a publicly-verifiable fact of which the Court can take judicial notice. Historical stock prices for Aspen shares can be found at http://www.nasdaq.com (Ticker: AZPN).

**B.     If Plaintiffs First Had Notice Before September 18, 2001, Their Claims Must Be Dismissed As Time-Barred**

If plaintiffs suffered damages it can only be because they knew of the alleged fraud prior to September 18, 2001. But if plaintiffs first knew or had notice of the alleged fraud prior to September 18, 2001, then by their own argument, the claims would have begun to run and their securities claims would now be time-barred.

**C.     Mr. Callaway's Claims Must Be Dismissed For This And Other Reasons**

The same arguments apply to the recently-added plaintiff's claims, except the dates are shifted forward (on November 27, 2002, he first asserted a federal securities claim against Aspen, so if he had notice or knowledge before November 27, 2001, the statute of limitations would have run).

In addition, but for the contract claim (which should be dismissed for other reasons), the claims of Mr. Callaway should also be dismissed on statute of limitations grounds because they do not relate back to the other plaintiffs' earlier-filed complaint. See Aspen Mem. at 13-14. In opposition, plaintiffs' only response is that "this issue cannot be decided on the allegations of the Complaint." Opp. Mem. at 9. That is incorrect. Courts hold plaintiffs to an objective standard of proof for statute of limitations in securities cases, and thus routinely dismiss actions on 12(b)(6) motions. See, e.g., In re Prudential-Bache Energy Income Partnerships Sec. Litig., No. MDL 888, 1992 WL 142575 (E.D. La. June 9, 1992) (granting motion to dismiss); De La Fuente v. DCI Tele., Inc., 206 F.R.D. 369, 381 (S.D.N.Y. 2002) (holding that "a court can, as a matter of law, determine whether an investor of ordinary intelligence would be on inquiry notice in the circumstances described in the complaint" and granting motion to dismiss). In fact, the very case cited by plaintiffs in their brief, In the Matter of Mike's, Inc., No. 02-1073, 2002 WL 1767425 (E.D. La. July 30, 2002), concerned a motion to amend the complaint pursuant to Fed. R. Civ. P. 15(c), in which the Court denied relation back as a matter of law. As we pointed out in our opening briefs, none of the Mike's factors would permit Mr. Callaway to relate back his claims.

7

## IV. PLAINTIFFS' BRIEF CANNOT CURE THEIR INADEQUATELY PLED COMPLAINT

There is little to add with respect to plaintiffs' cavalcade of arguments attempting to defend their inadequately pled federal and state law fraud, negligence and contract claims. See Opp. Mem. at 10-18. This Court need only review the exacting pleading standards which apply to these claims (see Aspen Mem. at 5-8), the relevant passages in Aspen's opening brief (see id. at 15-25), and plaintiffs' Amended Complaint to see that plaintiffs' arguments go nowhere. However, we do address below some of the more significant weaknesses.

First, plaintiffs' "scienter" argument (Opp. Mem. at 11-12) is flawed in several respects. Plaintiffs cannot point to a single allegation which suggests that the reason Aspen said it was "not eligible" to file a Form S-3 on November 16, 2001 had anything to do with the supposed "deficiency" letters sent by the SEC earlier in the year. (It did not.) It is plaintiffs' burden to make this connection and they have done nothing. Further, there is nothing in plaintiffs' arguments or allegations suggesting Aspen acted with "severe recklessness," which is an "extreme departure from the standard of ordinary care." Nathenson v. Zonagen, Inc., 267 F.3d 400, 407 (5th Cir. 2001). The only fact that plaintiffs point to for the proposition that Aspen exercised "severe recklessness" about its eligibility to file a Form S-3 is the so-called "deficiency" letter sent by the SEC on February 23, 2001. See Opp. Mem. at 11-12. First, there is no such thing as a "deficiency" letter from the SEC. Plaintiffs have fabricated this term and, not surprisingly, have failed to include it with their complaint. Second, plaintiffs have failed to allege any facts to support the claim that this letter put Aspen on notice that it was ineligible to file a Form S-3. A plaintiff cannot attach the tag "deficiency" to an SEC comment letter in place of a sufficient allegation that the letter put Aspen on notice that it was ineligible to file Form S-3 (particularly because there is no allegation in the Amended Complaint that the content of the "deficiency" letter had anything to do with Aspen's eligibility).

Second, plaintiffs challenge at numerous points in their brief (Opp. Mem. at 4, 13, 15) the fact that the RRA contemplates the very contingency that plaintiffs allege is the basis for their

8

claims; namely, if "Aspen fails to satisfy the requirements for use of Form S-3, as set forth in the general instructions to Form S-3." Ex. B § 2.1(c)(iii). They argue that the "cited contract provision contemplates events after registration has been made effective and the shares are being sold." Opp. Mem. at 13. This argument is incorrect for at least two reasons. First, it is illogical to assume that that RRA includes a provision that allows Aspen to suspend or withdraw the Form S-3 because it was ineligible to file such a Form only <u>after</u> the Form resulted in a successful registration. If the registration were successful, <u>a fortiori</u>, Aspen must have been eligible to file it. Second, the contract language belies plaintiffs' argument. Section 2.1(c) of the RRA states that "Aspen shall maintain the effectiveness of the Initial Registration for a period of 90 days after it has been declared effective ... <u>Notwithstanding the forgoing</u>, Aspen may ... suspend or withdraw any such registration Statement ... [if] Aspen fails to satisfy the requirements for use of Form S-3." Aspen Mem.Ex. B § 2.1(c)(iii) (emphasis added). There is no way to interpret the phrase "Notwithstanding the foregoing" other than that the foregoing language (regarding activities after successful registration) is separate from a suspension due to a lack of eligibility.

    <u>Third</u>, plaintiffs' one-paragraph "reliance" argument (Opp. Mem. at 15) concedes the point. Plaintiffs say that the allegations of "acquiescence" in the Amended Complaint do not concern plaintiffs'"allegations of reliance." If true, then the Amended Complaint has no allegations of reliance and the claims should be dismissed. This argument is a good example of the confusion and incoherence that permeates plaintiffs' Amended Complaint and brief.

## Conclusion

For the reasons stated above and in Aspen's December 20, 2002 Memorandum In Support, the Court should grant Aspen's motion and dismiss the Amended Complaint.

Date: January 29, 2003

Respectfully submitted,

Glenn M. Farnet (Bar Roll No. 20185)
KEAN, MILLER, HAWTHORNE,
D'ARMOND, McCOWAN & JARMAN, L.L.P.
One American Place, 22nd Floor
Post Office Box 3513 (70821)
Baton Rouge, Louisiana 70825
Telephone: (225) 387-0999
Fax: (225) 388-9133

AND

Julie P. Silbert (Bar Roll No. 14439)
KEAN, MILLER, HAWTHORNE,
D'ARMOND, McCOWAN & JARMAN, L.L.P.
Energy Centre, Suite 1560
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 585-3050
Fax: (504) 436-5566

Of Counsel:

Justin J. Daniels (*pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
Telephone: (617) 573-4800
Fax: (617) 573-4822

Counsel for Defendant, Aspen Technology, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing documents have been mailed, postage prepaid to the following:

    Mr. Eugene G. Taggart
    TAGGART, MORTON, OGDEN,
       STAUB, ROUGELOT & O'BRIEN, L.L.C.
    1100 Poydras Street
    Suite 2100
    New Orleans, Louisiana 70163-2100

New Orleans, Louisiana this 29 day of January, 2003.